647 S.E.2d 219

**Eddie Christopher DAVIS, Respondent**

**v.**

**The SCHOOL DISTRICT OF GREENVILLE COUNTY, Appellant.**

**No. 26350.**

Supreme Court of South Carolina.

Heard April 17, 2007.

Decided June 25, 2007.

40

---

C. Wade Cleveland, of Greenville, for Appellant.

Matthew J. Kappel, of Greenville, for Respondent.

Justice WALLER:

This is a school discipline case where the hearing officer disciplined respondent Eddie Christopher Davis by transfer-

ring him from Wade Hampton High School to an alternative school. The Greenville County School Board ("the Board") affirmed the transfer, but the circuit court reversed. The School District of Greenville County ("the District") directly appeals the circuit court's decision. We reverse and vacate.

## FACTS

On August 24, 2004, respondent's teacher "smelled a peculiar odor" coming from the area of two students which she concluded was the smell of marijuana. The assistant principal, Terry Carnes, took respondent and the other student to his office where Carnes decided the odor was coming from respondent's clothes and hands. The principal, Bill Utsey, confirmed the smell of marijuana on respondent's hands and clothing.[1] As a result, respondent was suspended and, pursuant to the District's discipline policy, expulsion proceedings were initiated.[2]

That same day, respondent's mother was sent a letter informing them of the suspension and the fact that expulsion was being recommended. Prior to the hearing, another letter went out informing respondent's mother of respondent's rights, including the right to a hearing before a hearing officer, the right to be represented by counsel, and "all other regular rights" including the right to call and question witnesses.

The hearing was held on September 2, 2004, and respondent was represented by counsel. Principal Utsey testified he smelled marijuana on respondent's clothes and hands, and therefore was required to recommend that respondent be expelled. Respondent denied he had smoked marijuana the morning of August 24th but testified that he had smoked a Newport menthol cigarette before coming to school.

---

1. It is undisputed that no one observed any visual signs respondent was under the influence of marijuana. The only evidence of marijuana use was the odor detected on respondent's hands and clothes.

2. The District's Discipline Code provides that if a high school student comes onto school property after using an illegal drug, as "evidenced by scent, actions or admission," the result will be that the principal recommends expulsion.

Respondent also presented evidence regarding drug screening tests he took on August 31, 2004, conducted by a company called Accurate Diagnostics. The urinalysis and hair tests for marijuana both came back negative. The office manager for Accurate Diagnostics testified that marijuana stays in a user's urine anywhere from 14 to 30 days, and respondent's hair sample would have shown marijuana use from the previous three months. However, in response to the hearing officer's question of "how little marijuana does one have to smoke to show up on a test," the witness stated that if a person "smoke[d] one joint, [then] that is supposed to show up.... If someone takes one puff, it is likely that it may not show up."

Based on the evidence that three people smelled marijuana on respondent, the hearing officer ruled the misconduct charge was supported by the evidence. Respondent, however, was not expelled; instead, the hearing officer assigned respondent to the District's alternative program. Respondent appealed to the Board which affirmed the hearing officer's decision.

Respondent then appealed to the circuit court. The circuit court ruled respondent had the right to appeal under S.C.Code section 59–63–240 and summarily reversed the Board's decision.

## ISSUE

Did the circuit court have subject matter jurisdiction to review the Board's decision affirming respondent's transfer to the alternate program?

## DISCUSSION

■ The District argues the circuit court lacked jurisdiction to review the Board's decision because the statute governing the transfer of a student does not provide for appeal beyond the Board. Respondent, on the other hand, asserts that because expulsion proceedings were initiated, this matter is governed by the expulsion statute which specifically allows for an appeal from the Board's decision. We agree with the District and find the circuit court lacked jurisdiction to hear respondent's appeal.

In Title 59 of the S.C.Code, Chapter 63, Article 3 specifically addresses the issue of student discipline. Section 59–63–240 states as follows, in relevant part:

> The board may expel for the remainder of the school year a pupil for any of the reasons listed in § 59–63–210.[3] If procedures for expulsion are initiated, the parents or legal guardian of the pupil shall be notified in writing of the time and the place of a hearing either before the board or a person or committee designated by the board. At the hearing the parents or legal guardian shall have the right to legal counsel and to all other regular legal rights including the right to question all witnesses. If the hearing is held by any authority other than the board of trustees, the right to appeal the decision to the board is reserved to either party.... The pupil may be suspended from school and all school activities during the time of the expulsion procedures. **The action of the board may be appealed to the proper court.**

S.C.Code Ann. § 59–63–240 (2004) (emphasis added). The statutory section governing the transfer of students provides:

> The board or a designated administrator may transfer a pupil to another school **in lieu of suspension or expulsion** but only after a conference or hearing with the parents or legal guardian. **The parents or legal guardian may appeal a transfer made by an administrator to the board.**

S.C.Code Ann. § 59–63–250 (2004) (emphasis added).

■ In *Byrd v. Irmo High School,* 321 S.C. 426, 468 S.E.2d 861 (1996), this Court dealt with a similar situation. There, a student had been suspended for 10 days for coming to a high school football game after drinking alcohol. The student attempted to appeal the suspension to the circuit court which ruled it lacked jurisdiction over public school suspensions. We upheld the finding of no subject matter jurisdiction. Comparing the suspension statute [4] with the expulsion statute, we

---

3. Section 59–63–210(A) sets forth the reasons a district board of trustees may authorize the expulsion, suspension, or transfer of a student, including "for violation of written rules and promulgated regulations established by the district board."

4. This section provides:

found that "there exists a qualitative difference in the appellate procedures granted to students being suspended and those being expelled." *Id.* at 433, 468 S.E.2d at 865. Specifically, the Byrd Court stated that "[b]ecause the expulsion provision expressly grants the student a right to appeal to 'the proper court,' and no such language exists in the suspension provision, it appears that the Legislature intended that suspended students not be entitled to a right to appeal beyond" the Board level.[5] *Id.* at 433–34, 468 S.E.2d at 865.

In the instant case, the section governing the transfer of a student is similar to the suspension statute at issue in *Byrd:* it does not provide for an appeal beyond the Board's decision. *See* § 59–63–250. Therefore, consistent with the plain language of section 59–63–250 and the reasoning of *Byrd,* we find the circuit court lacked subject matter jurisdiction to entertain respondent's appeal.

 Respondent contends, however, that because the proceedings began as expulsion proceedings, and the procedure initially followed by the District was pursuant to the expulsion statute, *see* § 59–63–240, he retains the full appellate rights outlined in that statutory section. Respondent further main-

---

When a pupil is suspended from a class or a school, the administrator shall notify, in writing, the parents or legal guardian of the pupil, giving the reason for such suspension and setting a time and place when the administrator shall be available for a conference with the parents or guardian. The conference shall be set within three days of the date of the suspension. After the conference the parents or legal guardian may appeal the suspension to the board of trustees or to its authorized agent.

S.C.Code Ann. § 59–63–230 (2004).

**5.** In *Floyd v. Horry County Sch. Dist.,* 351 S.C. 233, 569 S.E.2d 343 (2002), we clarified *Byrd* and held that a student may appeal to circuit court "for the sole purpose of challenging a temporary school suspension under" the United States Supreme Court's decision in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). *Floyd,* 351 S.C. at 237, 569 S.E.2d at 345. This Court further stated that "[i]f the minimal procedural standards of *Goss v. Lopez* are met, the suspension shall be affirmed." *Id.* Pursuant to *Goss v. Lopez,* the minimal process constitutionally due a student for a suspension of ten days or less is: (1) oral or written notice of the charges; (2) an explanation of the evidence; and (3) an opportunity to present his side of the story. 419 U.S. at 579, 95 S.Ct. 729. The instant appeal does not involve respondent's initial temporary suspension. We nevertheless note that minimal process standards clearly were met in this case.

tains that because the statutory language provides that the "action of the board may be appealed to the proper court"—without regard to whether the action resulted in an actual expulsion—the circuit court properly found it had the power to review the Board's action in this case. We disagree.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). Furthermore, the "goal of statutory construction is to harmonize conflicting statutes whenever possible and to prevent an interpretation that would lead to a result that is plainly absurd." *Id.* at 91, 533 S.E.2d at 584.

Section 59–63–250 expressly provides for discipline in the form of a transfer "in lieu of suspension or expulsion;" therefore, it plainly envisions the possibility that the student may be involved in expulsion proceedings prior to being transferred. The statute then specifically provides for only one level of appeal. Had the Legislature intended for a transferred student to have all the rights outlined in the expulsion statute, it could have provided specifically for that procedure in section 59–63–250. We therefore hold the Legislature intended that when a student is merely transferred, and not expelled, the review of the decision ends with the Board. *See* § 59–63–250; *Hodges v. Rainey, supra* (the cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature).

Indeed, a contrary interpretation would create a significant conflict between sections 59–63–240 and 59–63–250, allowing further appellate review of a transfer if the proceedings were initiated under the expulsion statute, but not of a transfer initiated under the transfer statute. *Hodges v. Rainey, supra* (statutes should be harmonized whenever possible to prevent an interpretation that would lead to a result that is plainly absurd); *see also Aledo Indep. Sch. Dist. v. Reese,* 987 S.W.2d 953, 958 (Tex.App.1999) (where the court held that a student's transfer to an alternative education program was not an expulsion, in part because the applicable statutes provided no district court review for alternative placements but allowed further court review for expulsions). Thus, once the hearing officer rejected expulsion and imposed the sanction of trans-

fer, the transfer statute became applicable. That section's appellate procedure simply does not provide for appeal of the Board's decision to the circuit court. *See* § 59–63–250. Accordingly, the circuit court lacked subject matter jurisdiction to review the Board's decision.[6]

## CONCLUSION

Based on the foregoing, we reverse the circuit court's decision and vacate the circuit court's order.

**REVERSED AND VACATED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.

---

6. We decline to address the remaining issues raised on appeal. *See Hagood v. Sommerville*, 362 S.C. 191, 199, 607 S.E.2d 707, 711 (2005) (the appellate court need not address additional issues when resolution of prior issue is dispositive).